1  PHILLIP A. TALBERT
   United States Attorney
2  MIRIAM R. HINMAN
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900
5
   Attorneys for Plaintiff
6  United States of America

**FILED**

Mar 03, 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

7

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,          CASE NO.    2:22-cr-0046 TLN

11                     Plaintiff,      18 U.S.C. § 1955(a) – Conducting an Illegal
                                       Gambling Business; 18 U.S.C. § 1956(h) –
12              v.                     Conspiracy to Commit Money Laundering (2 counts);
                                       18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), 18 U.S.C.
13  GAL YIFRACH,                       § 1955(d) and 28 U.S.C. § 2461(c) – Criminal
    NICK SHKOLNIK,                     Forfeiture
14  aka Nickita Shkolnik,
    SHALOM IFRAH, and
15  SCHNEUR ZALMAN GETZEL
    ROSENFELD,
16
                       Defendants.
17

18

19                          I N D I C T M E N T

20  COUNT ONE: [18 U.S.C. § 1955(a) – Conducting an Illegal Gambling Business]

21       The Grand Jury charges: T H A T

22                          GAL YIFRACH, and
                            NICK SHKOLNIK,
23
    defendants herein, beginning no later than in or about January 2018, and continuously thereafter through
24
    in or about January 2022, in the State and Eastern District of California, did conduct, manage, supervise,
25
    and direct all or part of an illegal gambling business, to wit, a gambling business involving supplying,
26
    operating, and maintaining video slot machines and devices and involving receiving, holding, and
27
    forwarding money to be staked, pledged, bet, and wagered upon the result of a contest and contingent
28

INDICTMENT                                    1

event, in violation of the laws of the State of California, to wit, California Penal Code §§ 330b and 337a(a)(3), and which involved five or more persons who conducted, financed, managed, supervised, directed, and owned all or part of said illegal gambling business, and which remained in substantially continuous operation for a period in excess of thirty days and had gross revenue of $2,000.00 in any single day, all in violation of Title 18, United States Code, Sections 2 and 1955(a).

COUNT TWO: [18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering]

The Grand Jury further charges: T H A T

GAL YIFRACH, and
SHALOM IFRAH,

defendants herein, as follows:

## I.     INTRODUCTION

At all times relevant to this Indictment:

1. GAL YIFRACH was an individual residing in Los Angeles, California.

2. SHALOM IFRAH was an individual residing in Los Angeles, California.

3. NICK SHKOLNIK was an individual residing in Van Nuys and Los Angeles, California.

4. YOSEF YITZCHAK BESHARI, charged elsewhere, was an individual residing in Los Angeles, Van Nuys, and North Hollywood, California.

5. Individual 6 resided in Beverly Hills and Los Angeles, California.

6. CORPORATION 3 was a corporation registered in Van Nuys, California.

7. CORPORATION 4 was a corporation registered in Los Angeles, California.

8. CASINO 1 was a casino located in Bell Gardens, California.

9. YIFRACH, SHKOLNIK, BESHARI, and others known and unknown to the grand jury conducted an illegal gambling business from various locations in the Eastern District of California and elsewhere. This business collected proceeds from its gambling operations, at least in part, in the form of cash.

## II.     THE CONSPIRACY

10. Beginning no later than in or about March 2018 and continuing through in or about July 2020, in the State and Eastern District of California and elsewhere, YIFRACH and IFRAH did

1  knowingly combine, conspire, and agree with each other and with persons·known and unknown to the

2  Grand Jury to commit offenses against the United States in violation of Title 18, United States Code,

3  Section 1956, to wit:

4           a)      to knowingly conduct and attempt to conduct financial transactions affecting

5  interstate commerce and foreign commerce, which transactions involved the proceeds of

6  specified unlawful activity, that is, conducting an illegal gambling business in violation of 18

7  U.S.C. § 1955(a), knowing that the transactions were designed in whole or in part to conceal and

8  disguise the nature, location, source, ownership, and control of the proceeds of specified

9  unlawful activity, and that while conducting and attempting to conduct such financial

10  transactions, knew that the property involved in the financial transactions represented the

11  proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section

12  1956(a)(1)(B)(i); and,

13           b)      to knowingly conduct and attempt to conduct financial transactions affecting

14  interstate commerce and foreign commerce, which transactions involved the proceeds of

15  specified unlawful activity, that is, conducting an illegal gambling business in violation of 18

16  U.S.C. § 1955(a), knowing that the transactions were designed in whole or in part to avoid a

17  transaction reporting requirement under Federal law, and that while conducting and attempting to

18  conduct such financial transactions knew that the property involved in the financial transactions

19  represented the proceeds of some form of unlawful activity, in violation of Title 18, United

20  States Code, Section 1956(a)(1)(B)(ii).

21                       **III.**     **MANNER AND MEANS**

22      The manner and means used to accomplish the objectives of the conspiracy included, among

23  others, the following:

24          11.     YIFRACH and other individuals acting at YIFRACH's direction, including SHKOLNIK

25  and BESHARI, collected the cash proceeds of their illegal gambling business from various locations in

26  the Eastern District of California and elsewhere, and they transported those cash proceeds to other

27  locations in California.

28          12.     Individuals who had collected the cash proceeds of the illegal gambling business at

1 YIFRACH's direction, including SHKOLNIK and BESHARI, delivered such cash proceeds to

2 YIFRACH and IFRAH.

3       13.      YIFRACH and IFRAH used, caused to be used, and agreed to use multiple methods to

4 exchange cash proceeds of the illegal gambling business for other items of value to conceal the fact that

5 their income was derived from operating an illegal gambling business.

6       14.      For example, as one method, YIFRACH and IFRAH provided, caused to be provided,

7 and agreed to provide cash proceeds of the illegal gambling business to Individual 6 in exchange for

8 checks from CORPORATION 3 and CORPORATION 4.

9       15.      As another method, YIFRACH and IFRAH provided, caused to be provided, and agreed

10 to provide cash proceeds of the illegal gambling business to individuals in exchange for casino chips.

11 YIFRACH subsequently exchanged the casino chips for checks from the casino.  YIFRACH deposited

12 such casino checks into his bank account and used the funds to purchase real estate.

13       16.      In addition, YIFRACH and IFRAH exchanged, caused to be exchanged, and agreed to

14 exchange cash proceeds of the illegal gambling business in amounts of $10,000 or less in exchange for

15 cash in larger denominations from a bank, agreeing and intending that the amount of cash exchanged at

16 one time be equal to or less than $10,000 for the purpose of avoiding transaction reporting requirements.

17       17.      YIFRACH and IFRAH frequently sent electronic messages to each other to coordinate

18 the transactions.

19       18.      For example, on or about March 4 and 5, 2018, YIFRACH and IFRAH discussed by

20 electronic message taking money from BESHARI and from YIFRACH's drawer to exchange for checks

21 totaling around $10,800.  On or about March 5, 2018, YIFRACH's JPMorgan Chase bank account

22 ending in 9897 received five checks totaling $10,893.47 from CORPORATION 3.

23       19.      In another example, between on or about October 24 and October 27, 2018, YIFRACH

24 and IFRAH discussed by electronic message taking money from BESHARI, SHKOLNIK, and

25 YIFRACH's safe in order to give a total of $150,000 to an individual in exchange for casino chips from

26 CASINO 1.  On or about November 28, 2018, YIFRACH exchanged $200,500 in casino chips for two

27 checks totaling $200,500 from CASINO 1.

28       20.      In another example, on or about October 25, 2018, IFRAH informed YIFRACH by

electronic message that he could exchange only about "30" to $100 bills because he could change only "10" in each bank without having a report, and YIFRACH agreed. Between on or about October 25 and October 27, 2018, IFRAH conducted multiple exchanges at banks where he exchanged exactly $10,000 in smaller bills for larger bills.

21. In another example, on or about January 8, 2020, YIFRACH told IFRAH by electronic message that they needed to consult with someone about cleaning the cash, and IFRAH responded that it would be best to continue registering as an employee of a company and giving cash for checks. All in violation of Title 18, United States Code, Section 1956(h).

COUNT THREE: [18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering]

The Grand Jury further charges: T H A T

SCHNEUR ZALMAN GETZEL ROSENFELD,

defendant herein, as follows:

## I. INTRODUCTION

At all times relevant to this Indictment:

22. SCHNEUR ZALMAN GETZEL ROSENFELD was an individual residing in Studio City, California, and Miami and Davie, Florida.

23. YOSEF YITZCHAK BESHARI, charged elsewhere, was an individual residing in Van Nuys and North Hollywood, California.

24. CORPORATION 1 was a corporation registered in Studio City, California, and owned and operated by ROSENFELD.

25. CORPORATION 2 served as the escrow company for BESHARI's purchase of a house in North Hollywood, California.

26. BESHARI, YIFRACH, SHKOLNIK, and others known and unknown to the grand jury conducted an illegal gambling business from various locations in the Eastern District of California and elsewhere. This business collected proceeds from its gambling operations, at least in part, in the form of cash.

## II. THE CONSPIRACY

27. From no later than in or about May 2019 through in or about January 2021, in the State

INDICTMENT

5

and Eastern District of California and elsewhere, ROSENFELD and BESHARI did knowingly combine,

conspire, and agree with each other and with persons known and unknown to the Grand Jury to commit

offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit: to

knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign

commerce, such transactions involving the proceeds of a specified unlawful activity, to wit, conducting

an illegal gambling business in violation of 18 U.S.C. § 1955(a), knowing that such transactions were

designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control

of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such

financial transactions knew that the property involved in the financial transactions represented the

proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section

1956(a)(1)(B)(i).

### III.    MANNER AND MEANS

The manner and means used to accomplish the objectives of the conspiracy included, among

others, the following:

28.     BESHARI and other individuals collected the cash proceeds of their illegal gambling

business from various locations in the Eastern District of California and elsewhere, and they transported

those cash proceeds to other locations in California.

29.     BESHARI retained some of the collected cash proceeds of the illegal gambling business

as his salary and provided the remainder of the cash proceeds to other individuals involved in managing

the illegal gambling business.

30.     BESHARI gave cash proceeds of the illegal gambling business to ROSENFELD in

exchange for various payments from ROSENFELD and his business, CORPORATION 1.

31.     In exchange for cash proceeds of the illegal gambling business, ROSENFELD provided

checks to BESHARI.

32.     In exchange for cash proceeds of the illegal gambling business, ROSENFELD also

caused CORPORATION 1 to make direct deposits to a bank account belonging to BESHARI.

BESHARI obtained a mortgage to purchase a house in North Hollywood based on an application in

which he stated that he was employed by CORPORATION 1, when in fact he was paying for his

purported salary with the proceeds of the illegal gambling business. ROSENFELD provided signed documents for that mortgage application falsely claiming that BESHARI was receiving a salary of $11,000 per month as an employee of CORPORATION 1 and that he visited markets and smoke shops as part of his employment with CORPORATION 1.

33.     In exchange for cash proceeds of the illegal gambling business, on or about August 5, 2020, ROSENFELD also made a wire transfer of $150,000 to CORPORATION 2 for BESHARI's purchase of the house in North Hollywood. ROSENFELD provided a letter stating that the wire transfer of funds was a gift to BESHARI, when in fact the funds were provided in exchange for cash proceeds of the illegal gambling business.

34.     ROSENFELD and BESHARI frequently sent electronic messages to each other to coordinate the transactions.

35.     For example, on or about June 30, 2020, ROSENFELD told BESHARI by electronic message that for $5500, BESHARI would need to give $5960 to ROSENFELD and BESHARI would receive $5025. On or about July 2, 2020, BESHARI's JPMorgan Chase bank account ending in 0362 received a direct deposit of $5,024.25 from CORPORATION 1.

36.     In another example, on or about July 27, 2020, BESHARI told ROSENFELD by electronic message that he was outside with the money.

37.     In another example, on or about July 28, 2020, BESHARI sent to ROSENFELD an unsigned letter describing BESHARI's purported work for CORPORATION 1.

All in violation of Title 18, United States Code, Section 1956(h).

FORFEITURE ALLEGATION: [18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), 18 U.S.C. § 1955(d) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1.     Upon conviction of the offenses alleged in Counts One through Three of this Indictment, defendants GAL YIFRACH, NICK SHKOLNIK, SHALOM IFRAH, and SCHNEUR ZALMAN GETZEL ROSENFELD shall forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982 (a)(1), 18 U.S.C. § 1955(d) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, and/or any property used or intended to be used, in

any manner or part, to commit, or to facilitate the commission of such violations, including but not limited to the following:

    a.    Approximately $317,051.00 in U.S. Currency;

    b.    Approximately $85,245.00 in U.S. Currency seized from U.S. Private Vault Box Number 4504;

    c.    Approximately $163,051.00 in U.S. Currency seized from U.S. Private Vault Box Number 4706;

    d.    Approximately 4.25 Bitcoin;

    e.    Real property located at 465 S. Mansfield Avenue, Los Angeles, California, Los Angeles County, APN: 5507-011-013, more fully described as:

> All that real property situated in the City of Los Angeles County of Los Angeles, State of California, described as:

> Lot 184 of Tract No. 5049, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 54, Page 52 of Maps, in the Office of the County Recorder of said County.

    f.    Real property located at 806 N. Genesee Avenue, Los Angeles, California, Los Angeles County, APN: 5527-005-003, more fully described as:

> Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

> Lot 149 of Tract 4849, in the City of Los Angeles as per Map recorded in Book 51, Pages 64 and 65 of Maps, in the Office of the County Recorder of said County.

    g.    Real property located at 851 – 853 N. Las Palmas Avenue, Los Angeles, California, Los Angeles County, APN: 5524-005-002, more fully described as:

> All that real property situated in the City of Los Angeles, County of Los Angeles, State of California, described as:

> Lot 140 of Tract No. 4427, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 48, Page 65 of Maps, in the Office of the County Recorder of said County.

2.    If any property subject to forfeiture, as a result of the offenses alleged in Counts One through Three of this Indictment, for which the defendants are convicted:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

1         d. has substantially diminished in value; or

2         e. has been commingled with other property which cannot be divided without difficulty;

3

4 it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to

5 seek forfeiture of any other property of defendants, up to the value of the property subject to forfeiture.

6

7                              A TRUE BILL.

8                              **/s/ Signature on file w/AUSA**

9                              _____

                             FOREPERSON

10

11 _____

12 PHILLIP A. TALBERT
   United States Attorney

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

No. _ _ _ _ _ _ _ _ _ _

---

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA
*vs.*

GAL YIFRACH;NICK SHKOLNIK, aka Nickita Shkolnik;SHALOM IFRAH;SCHNEUR ZALMAN GETZEL ROSENFELD

---

## I N D I C T M E N T

**VIOLATION(S):** 18 U.S.C. § 1955(a) – Conducting an Illegal Gambling Business;
18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering (2 counts);
18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), 18 U.S.C. § 1955(d) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

---

*A true bill,*

## /s/ Signature on file w/AUSA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
*Foreman.*

*Filed in open court this* _ _ _ _ 3 _ _ _ _ _ _ _ *day*

*of* _ March _ _ _ _ , *A.D. 20* 22 _ _

- - - - - - - - - - - - - /s/ N. Cannarozzi _ _ _ _ _ _ _ _ _ _ _
*Clerk.*

---

*Bail, $* _No bail bench warrants to issue as to all defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

---

GPO 863 525

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

### United States v. Gal Yifrach, et al.
**Penalties for Indictment**

**Defendants**

**GAL YIFRACH, NICK SHKOLNIK, SHALOM IFRAH, and SCHNEUR ZALMAN GETZEL ROSENFELD**

**COUNT 1:**      **GAL YIFRACH, NICK SHKOLNIK**

VIOLATION:      18 U.S.C. § 1955(a) – Conducting Illegal Gambling Business

PENALTIES:      A maximum of up to 5 years in prison; or
Fine of up to $250,000; or both fine and imprisonment
Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 2:**      **GAL YIFRACH, SHALOM IFRAH**

VIOLATION:      18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering

PENALTIES:      Maximum of 20 years imprisonment, or
Fine of up to $500,000, or twice the value of the monetary instrument or
funds involved, whichever is greater;
Supervised release of three years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 3:**      **SCHNEUR ZALMAN GETZEL ROSENFELD**

VIOLATION:      18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering

PENALTIES:      Maximum of 20 years imprisonment, or
Fine of up to $500,000, or twice the value of the monetary instrument or
funds involved, whichever is greater;
Supervised release of three years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**FORFEITURE ALLEGATION:**      **all Defendants**

VIOLATION:      18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), 18 U.S.C. § 1955(d) and 28
U.S.C. § 2461(c) – Criminal Forfeiture

PENALTIES:      As stated in the charging document